UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Robert D. Dugan,

    Plaintiff,

v.                                                                                        Civil Action No. 2:10-CV-231

Commissioner of
Social Security Administration,

    Defendant.

## OPINION AND ORDER
(Docs. 5, 6)

Plaintiff Robert Dugan brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Pending before the Court are Dugan's motion to reverse the Commissioner's decision (Doc. 5), and the Commissioner's motion to affirm (Doc. 6).

For the reasons stated below, Dugan's motion is denied, and the Commissioner's motion is granted. Pursuant to Local Rule 7(a)(6), and no party having made a request for oral argument, the Court finds that oral argument is not required.

## Background

Dugan was born on July 24, 1969, and thus was thirty-six years old on the alleged disability onset date of December 20, 2005. (Administrative Record ("AR") 66, 134, 152.) He completed school through the twelfth grade, including participating in

specialized training in electronics. (AR 28, 30, 44, 170, 176.) Dugan has work experience as a dishwasher, a food packager, a machine operator, a salesclerk, and a scale master/machine operator. (AR 30-32, 52-53, 157, 171-72.) His most recent job was as a heavy machine operator for Casella Waste Management ("Casella"), which he performed for roughly four years, ending in 2005. (AR 30.) Dugan has been incarcerated for a total of twenty-five months of his life, including approximately thirteen months beginning in 2006 and ending in May of 2008 for the felony offense of driving under the influence ("DUI"). (AR 32, 316.) The record reveals that he has received at least five and at most eight DUIs, the first one occurring when he was twenty-one years old.[1] (AR 258, 314, 316, 322-23.)

On June 14, 2007, Dugan filed applications for disability insurance and supplemental security income benefits; the applications were denied initially and subsequently by a Federal Reviewing Officer. (AR 66-83, 134-45.) Dugan alleges that, starting on December 20, 2005, he has been unable to work due to depression, a broken foot/ankle, and an audible and physical tick. (AR 33-34, 39, 170.) The foot injury occurred in July 2003, when Dugan fell between a trailer and a loading dock at his job at Casella, causing damage to his left foot, big toe, and ankle. (AR 33, 216.) Since then, he has had two surgeries on his left foot, and it is "constantly in pain." (AR 33-34, 46.) He explains that it is "extremely hard" for him to stand for long periods of time due to swelling in his foot, and that it is difficult for him to walk, particularly on uneven ground.

---

[1] Treatment providers consistently note that Dugan has "received" multiple "DUIs," "DUI violations," or "DUI offenses." (*See, e.g.*, AR 250, 332, 334, 648.) The record does not reveal how many of these incidents led to actual convictions, though it is conceded that Dugan has multiple DUI convictions.

2

(AR 170.) He further states that he cannot drive as a result of his physical tick,[2] and he has a difficult time remembering anything. (*Id.*) He also claims he has a hard time distinguishing between risky and safe behavior due to frontal lobe damage. (*Id.*) On March 24, 2010, a hearing was held on Dugan's application. (AR 23-65.) Dugan appeared and testified, and was represented by counsel. (*Id.*) Additionally, vocational expert Ralph Richardson was present and testified at the hearing. (AR 51-65.)

On May 18, 2010, Administrative Law Judge ("ALJ") Paul Martin issued a decision finding that Dugan was not disabled under the Social Security Act. (AR 7-18.) Thereafter, the Decision Review Board informed Dugan that it had not completed its review during the prescribed period, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-5.) Having exhausted his administrative remedies, Dugan filed his Complaint in the instant action on October 1, 2010. (*See* Doc. 1.)

## **ALJ Determination**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to

---

[2] Irrespective of the tick preventing him from driving, Dugan testified at the administrative hearing that he lost his driver's license in 1991 as a result of a DUI conviction, and will not be eligible to apply for a license again "for a while." (AR 29, *see also* AR 317.)

3

whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this sequential analysis, ALJ Martin first determined that Dugan had not engaged in substantial gainful activity since his alleged onset date of December 20, 2005. (AR 9.) At step two, the ALJ found that Dugan had four severe impairments: "residuals from a left foot fracture," traumatic brain injury, depression, and "substance abuse in remission." (AR 10.) Conversely, the ALJ found that a self-inflicted gunshot wound and Dugan's attention deficit hyperactivity disorder were non-severe. (*Id.*) The ALJ noted that Dugan also suffers from Tourette's syndrome, but did not indicate at step

4

two whether this was a severe or non-severe impairment. (AR 11.) At step three, the ALJ found that none of Dugan's impairments met or medically equaled a listed impairment. (*Id.*)

Next, the ALJ determined that Dugan had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except for the following limitations: he could stand and walk for only two hours in an eight-hour workday; he could walk for only fifteen minutes uninterrupted; he could push and pull occasionally; he was precluded from using his left foot for foot controls; he could occasionally climb stairs and ramps; he should avoid ladders and scaffolds; he could frequently stoop, kneel, crouch, and crawl; he would need to avoid unprotected heights and dangerous machinery but could operate a vehicle occasionally; he was limited by certain environmental factors such as "excess of humidity, extreme temperatures, and vibrations"; he would need to avoid prolonged walking on uneven surfaces; he could understand, remember, and carry out four-to-five step instructions; and he could occasionally interact with coworkers and the public. (AR 12.) Based on this RFC and other vocational characteristics, the ALJ concluded that Dugan could not perform his past relevant work, but could perform other work existing in significant numbers in the national economy. (AR 16-17.) The ALJ concluded that Dugan had not been disabled from December 20, 2005 through the date of the decision. (AR 17.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the

6

Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

Dugan argues that the ALJ erred in failing to discuss Dugan's need to elevate his foot to reduce his pain, and in failing to require the VE to produce data substantiating his findings. The Court disagrees on both counts, and finds that substantial evidence supports the ALJ's decision.

### I. The ALJ Was Not Required to Discuss Dugan's Testimony Regarding Elevating His Foot.

Dugan testified at the administrative hearing that he would elevate his foot, i.e., "keep [it] straight out" at hip level while seated and watching television, for example, in an effort to relieve the swelling and pain. (AR 47.) Later in the hearing, the ALJ presented the VE with a hypothetical which included the limitation that the claimant would need to, "while he's sitting during the day, raise his . . . feet on a fairly frequent basis for extended period[s]." (AR 57.) The VE replied that there are no unskilled occupations that the claimant could perform if he "had to elevate his foot that much." (*Id.*) In his opinion, the ALJ did not discuss either Dugan's testimony regarding elevating his foot or the VE's testimony in response to the hypothetical including that limitation. Citing to *Pagan v. Chater*, 923 F. Supp. 547, 555 (S.D.N.Y. 1996), Dugan

7

asserts that the ALJ erred in failing to discuss and explain his implicit rejection of this testimony. (Doc. 5 at 5-6.)

Preliminarily, it is worth noting that Dugan did not state that he *needed* to elevate his foot to alleviate his pain; nor did he state how often he elevated his foot. Moreover, he was equivocal in his testimony about whether elevating his foot helped relieve the pain. Specifically, when asked by the ALJ at the administrative hearing whether elevating his foot "help[ed] relieve the pain," Dugan stated: "I think so. It might have been more mental, but in my head, as long as I was off it, at least I was taking - - giving it an opportunity to let it ease up and stop . . . hurting a little bit." (AR 47.) This testimony cannot reasonably be interpreted to indicate that Dugan *needed* to elevate his foot in order to function, and it provides no insight into how frequently Dugan elevated his foot. Thus, the relevance of Dugan's testimony regarding elevating his foot is questionable.

Even assuming the testimony is relevant, however, the ALJ was not required to discuss it in his opinion. Although the court in *Pagan* noted that "[t]he ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error[,]" that statement was made in the context of an analysis of medical testimony under the treating physician rule. *Pagan*, 923 F. Supp. at 556 (citing *Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988)). And in the next sentence, the court specified: "The medical conclusions *of a treating physician* constitute[] evidence that should not be rejected without explanation. . . . Clearly, the totality of the circumstances are open for consideration, but the ALJ cannot ignore *the medical evidence provided by a treating physician.*" *Id.* (emphasis added) (citing *Figueroa v. Chater*, 911 F. Supp. 98, 102

8

(W.D.N.Y. 1996)). The evidence at issue here – Dugan's testimony about elevating his foot to alleviate pain – is distinguishable from the "medical conclusions of a treating physician," and the ALJ was not required to treat such evidence in the same careful manner as required under the treating physician rule.

Nevertheless, assuming arguendo that the ALJ was required to specifically address Dugan's ambivalent testimony regarding elevating his foot, *see, e.g., Longbardi v. Astrue*, No. 07 Civ. 5952, 2009 WL 50140, at *22 (S.D.N.Y. Jan. 7, 2009) ("Courts in this Circuit have long held that an ALJ's failure to acknowledge relevant evidence or explain its implicit rejection is plain error.") (internal quotation omitted), the rationale for the ALJ's implied rejection of such testimony can easily be gleaned from the opinion, given the ALJ's explicit consideration of Dugan's left foot pain and determination that Dugan's statements regarding the intensity, persistence, and limiting effects of such pain were not credible to the extent they conflicted with the ALJ's RFC determination. (AR 12.) *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (D. Vt. 1983) (holding that, in cases where the evidence permits the court to "glean the rationale of an ALJ's decision," the decision need not mention every item of testimony or explain why the ALJ considered particular evidence unpersuasive or insufficient to lead to a conclusion of disability); *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (noting that, although the court would remand where it was "unable to fathom the ALJ's rationale in relation to evidence in the record," it would not remand where the court was "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that [the ALJ's] determination was supported by substantial evidence").

9

Specifically, the ALJ noted in his opinion that, in November 2009, although Dugan reported increased soreness in his foot, "this was after he was helping someone move a freezer," which activity fell "outside the range of work activities encompassed within the [ALJ's RFC]." (AR 14 (citing AR 614).) The ALJ further noted that, despite his foot pain, Dugan was able to adequately perform activities of daily living and functioning, including grocery shopping, picking up his apartment, folding laundry, and washing dishes. (AR 14 (citing AR 188); *see also* AR 189.) The ALJ also stated that, in July 2008, Dugan reported that he had stayed active working around the house and helping out his mother, and that, while incarcerated, he worked sixteen hours a week in a library. (AR 14 (citing AR 590).) The ALJ further stated that Dugan was not taking pain medications during the relevant time period, which "suggest[ed] that his pain [wa]s not as limiting as described." (AR 14 (citing AR 643); *see also* AR 36.)

These factors amount to substantial evidence supporting the ALJ's determination that Dugan's foot pain was not as severe as alleged, and did not prevent Dugan from performing any work. In further support of such determination, the ALJ judiciously noted that: (a) Dugan had testified at the hearing "that his current [foot] pain was likely due to his surgery a month prior"; and (b) prior to his multiple surgeries, Dugan "was functioning within the limitations identified in the above [RFC]." (AR 15.) The ALJ also appropriately considered the opinions of treating physician Dr. Stephen Rosmus (AR 632-41) and state agency physician Dr. Geoffrey Knisley (AR 337-44) in support of his decision that Dugan's foot pain was not as severe as alleged. (AR 15.) Neither of these opinions state that Dugan was precluded from performing any work or could perform

10

only those jobs which would allow elevation of his foot.  Rather, both opinions support the ALJ's determination that Dugan could sustain work at the light exertional level with some additional limitations, including walking for only a short period of time, refraining from using his left foot for foot controls, and avoiding working at unprotected heights or with dangerous machinery.  (AR 12, 15; *see also* AR 633-38, 337-44.)

For these reasons, there is no merit to Dugan's argument that the ALJ failed to adequately address his alleged need to elevate his foot.

## II.   The ALJ Was Not Required to Order the VE to Produce the Data Supporting His Findings.

At the administrative hearing, after the VE testified about the jobs he believed Dugan was able to perform given the RFC assigned by the ALJ, Dugan's counsel questioned the VE about the "source of [his] numbers[.]"  (AR 58.)  The VE explained that they were based on "labor statistics" which were derived from labor market surveys compiled by fifty-eight vocational counselors located throughout New England.  (*Id.*)  Dugan's counsel asked the VE to produce these surveys, but the VE explained that they are not published and he was not authorized to release them.  (AR 58-59.)  The VE further explained that the information used to compile the surveys is based on the Dictionary of Occupational Titles ("DOT"), and is proprietary to the U.S. Department of Labor.  (AR 58, 59, 61.)

Arguing that cross-examination of expert witnesses is an important right of claimants in social security hearings, Dugan contends the ALJ should have required the VE to produce the surveys so that his counsel could cross-examine the VE regarding (a)

the methodology used "in arriving at the final number of jobs[,]" and (b) the data supporting that methodology. (Doc. 5 at 7.) In support of this argument, Dugan cites to two Seventh Circuit cases, *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) and *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2003). In *McKinnie*, 368 F.3d at 911, the court held that, although a VE is free to give a "bottom line," the data and reasoning underlying that bottom line must be available on demand if the claimant challenges the foundation of the VE's opinions.

This Court recently rejected a claim very similar to the one advanced here in *Brault v. Social Security Administration*, No. 1:10-CV-112, 2011 WL 1135014, at *3 (D. Vt. Mar. 24, 2011). There, the VE had testified that the source of his numbers was the Occupational Employment Quarterly ("OEQ"), and the claimant argued that the "numbers . . . were improperly derived and do not meet the evidentiary standard for use in an administrative hearing." *Id.* (internal quotation omitted). Ruling in favor of the Social Security Administration, the Court held that the VE's testimony was sufficiently reliable, where it was based on the OEQ and the DOT codes, in addition to the VE's expertise. *Id.* (citing *Lawrence v. Astrue*, 337 F. App'x 579, 586 (7th Cir. 2009). Likewise, in *Babb v. Astrue*, No. 2:10-cv-49-DBH, 2010 WL 5465839, at *4 (D. Me. Dec. 29, 2010), the District of Maine rejected a claimant's argument that the VE's opinion was not "reliable" because he did not bring to the administrative hearing the records upon which he relied in reaching his conclusions. There, the court noted that *McKinnie* and two other Seventh Circuit cases which similarly held that a VE's underlying data must be made available on demand, had not been "cited with approval

12

for this proposition by a court outside the Seventh Circuit." *Id.* Rather, the court in *Babb* explained, "[o]ther courts have rejected this proposition." *Id.* (citing *Pritchett v. Astrue*, No. 5:09-CV-144 (CAR), 2009 WL 4730326, at *3-4 (M.D. Ga. Dec. 4, 2009); *Masters v. Astrue*, Civil Action No. 07-123-JBC, 2008 WL 4082965, at *4 n. 8 (E.D. Ky. Aug. 29, 2008)). The court held:

> It is enough that the vocational expert "used established and heretofore reliable methods and data and formed his professional opinions consistent with the methodology utilized by his contemporaries and other such professionals in relying upon sources, materials, and data that are not subject to further challenge until such time as either Congress or the Courts see fit to change them." [The court] reject[s] counsel's attempt in this case to suggest that a vocational expert may only testify at a Social Security hearing about the availability and suitability of jobs in which he or she has actually placed applicants or about which he or she has conducted a recent labor market survey.

*Id.* (quoting *Pritchett*, 2009 WL 4730326, at *4).

In this case, as noted above, the VE testified that his opinions were based on market surveys performed by vocational counselors using the standard occupational groups outlined in the DOT.[3] (AR 58.) These surveys constitute reliable data gathered by the Department of Labor, *see* SSR 00-4p, at *2; *Pritchett*, 2009 WL 4730326, at *4-5, and thus, like in *Babb*, the VE was not required to produce them upon Dugan's request. Moreover, the Second Circuit has held that a VE's testimony is sufficiently credible when, as here, he "identifie[s] the sources he generally consulted to determine [the number of jobs available to the claimant in the national economy]." *Galiotti v. Astrue*,

---

[3] The DOT provides a narrative description of the duties and responsibilities of each listed job by job title. The regulations provide that the Commissioner may take administrative notice of the jobs listed in the DOT. 20 C.F.R. §§ 404.1566(d), 416.966(d); *see* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("The regulations . . . provide that we will take administrative notice of 'reliable job information' available from various publications, including the DOT.").

13

266 F. App'x 66, 67 (2d Cir. 2008). The court stated: "[The claimant] has not pointed to any applicable regulation or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation." *Id.*

Furthermore, Dugan acknowledged that the VE in this case himself participated in the market surveys which formed the basis of his opinions. (*See* Doc. 5 at 6.) The VE was entitled to rely on his own research and experience as the basis of his testimony. *See Irish v. Chater*, No. 95-315-B, 1996 WL 211797, at *7 (D. N.H. Feb. 27, 1996) ("An ALJ uses a vocational expert to provide an opinion, based on his or her expertise, on complex issues about a claimant's abilities and job market possibilities that cannot easily be resolved by reference to manuals.") (citing 20 C.F.R. §§ 404.1566(e), 416.966(e)); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony."). In fact, the regulations explicitly permit the Commissioner to engage the services of a vocational expert to determine whether other work exists. *See* 20 C.F.R. § 404.1566(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist.").

Finally, it is worth noting that even the Seventh Circuit, cited by Dugan in support of his claim that the data or reasoning underlying VE Richardson's testimony should have been made available upon demand, has held that the harmless error rule applies in this context. *See Lawrence v. Astrue*, 337 F. App'x 579, 586 (7th Cir. 2009). In

14

*Lawrence*, the court held that, although the ALJ should have required the VE to supply the claimant with the data underlying his conclusions, the error was "entirely harmless" because the claimant had not challenged the validity of the VE's conclusions, and even if he had, the data underlying these conclusions would have had "no meaningful bearing on the outcome of [the] case." *Id.* The court also specifically noted with approval that the VE had based his testimony on the DOT and the OEQ, as well as on his own previous experience. *Id.* In this case as well, the VE based his testimony on the DOT and his own previous experience, and Dugan has failed to demonstrate (or even argue) that the VE's failure to produce the data underlying his conclusions had any meaningful bearing on the outcome of the case. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (applying harmless error standard in social security context, and holding that, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

## Conclusion

For the above reasons, Dugan's motion (Doc. 5) is DENIED, and the Commissioner's Motion (Doc. 6) is GRANTED. Accordingly, the decision of the Commissioner is hereby AFFIRMED.

Dated at Burlington, in the District of Vermont, this 23rd day of May, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge